### THE PEOPLE v. JOSEPH CLARK.

### THE PEOPLE v. JAMES SULLIVAN.

The effect and extent of the changes in the law of homicide, made by the Revised Statutes, considered so far as relates to the difference between murder and manslaughter.

Where there is doubt as to the construction of the statute defining a crime, and the same has never been passed upon by the court of last resort, it is proper, even in a capital case, to allow a writ of error with a stay of execution, until the question can be reviewed.

THE counsel for the prisoners, in both these cases, having made the same exception to the charge, in both cases applied to Mr. Justice EDMONDS for allowance of writs of error, and a stay of proceedings until the charge could be reviewed in the courts above.

On that application the judge delivered the following opinion:

Upon the bills of exceptions in these cases presented to me,

this day, I am asked to allow writs of error, with a stay of proceedings upon the execution of the sentences pronounced.

The question raised by the bills of exceptions is a grave one. It involves a construction of the Revised Statutes, and has never been authoritatively adjudged by our highest courts.

It is this: whether the intention to kill, which forms an element of the crime of murder under our Revised Statutes, must be a design previously formed, or whether it is enough that it be formed on the instant the homicide is perpetrated?

The Revised Statutes made very important alterations in the pre-existing law of homicide.

Before their enactment, a class of cases were held to be murder, where there was manifestly no design to kill; like the case of the school-master, who whipped his pupil so that he died, or that of the chimney-sweeper, who in extricating his boy from a chimney, did it so cruelly as to cause his death. The law implied malice aforethought, or an intent to kill.

On the other hand, there was a class of cases, where though there was an intent to kill, it was held not to be murder, but manslaughter, such as sudden affrays, in the heat of passion, and on sufficient provocation.

The Revised Statutes adopted an intention to kill, as the chief line of demarkation between murder and manslaughter, and the first class of cases I have mentioned, where there is no intention to kill, have been regarded as mitigated to manslaughter, and the last class of cases, as aggravated to murder.

In the case of *The People* v. *Austin*, I had, in a carefully considered opinion held, that in all cases (except one class which is not involved in these cases, and was not in that) there must be an intention to kill, to constitute the crime of murder, and that where there was such an intention, whether formed on the instant, or previously entertained, it was murder. I so charged the juries in the cases now under consideration.

If I had any doubt upon the question, I would have reserved it for the consideration of my brethren, but I had none, because I could find in the statutes no resting place for the killing of a human being, with an intention to kill, even

36—vol. 2.

though on a sudden impulse, except under the definition of murder. The counsel for the prisoners, who was assigned as such by the court, and who has himself occupied a prominent position in the administration of criminal justice, entertains doubts of the correctness of my ruling, and desires to obtain the decision of the higher courts.

In order to do that now, the execution of the sentences must be stayed. I ought not to refuse it, unless I am disposed to give to my decisions a finality, and an authority that does not properly belong to them. If either the Supreme Court in bank, or the Court of Appeals should differ with me in opinion, the consequences would be irremediable.

As, then, the question involved is a very grave one, and has never yet been passed upon by either of those courts, or by any tribunal higher than the Oyer and Terminer, and as it is raised very fairly and legitimately in these cases, it seems to be one that ought to be definitely settled, and by the highest authority in the state.

The same question was argued before the court at its last term, in the case of Carnel, is now under advisement, and will soon be determined.

These considerations have moved me to allow the writs of error, and to order the proceedings to be stayed until the decision thereon.