### THE PEOPLE *vs.* JOHN HENDRICKSON, JR.

In determining whether a writ of error should be allowed and a stay of proceedings granted, to enable a prisoner to review, before the supreme court, an exception taken at the Oyer and Terminer on a trial for murder, it is not necessary that the justice to whom the application is made, should arrive at the positive conclusion that the court erred on the law; it is enough that the exception is not deemed frivolous, and that it involves a gravely important question, in regard to which there is a conflict of authority, and which remains unsettled by the courts of this state.

Where a coroner's inquest was held on the day following that of the alleged murder, at which the prisoner was called by the coroner as a witness, and was sworn and examined by him, under oath, before the coroner's jury, having been subpœnaed to attend for that purpose, there being some circumstances tending to show that the prisoner was then suspected of the murder, though no charge had then been made against him, and on the subsequent trial of the prisoner at the Oyer and Terminer, the court permitted the counsel for the people to give in evidence the statements made by the prisoner on such examination, it was held there was sufficient doubt of the correctness of the decision to warrant the allowance of a writ of error with a stay of proceedings.

In July, 1853, at the Albany Oyer and Terminer, Justice MARVIN presiding, the prisoner was convicted on an indictment charging him with the murder of his wife, and sentenced to be executed on the 26th day of August, 1853. A number of exceptions were taken by the counsel for the prisoner during the progress of the trial. After a bill of exceptions had been prepared and settled, the counsel for the prisoner, upon notice to the attorney general, applied for the allowance of a writ of error and stay of proceedings on the judgment.

*Wheaton & Hadley*, for prisoner.

*Colvin* (Dist. Att'y), and
*Chatfield* (Attorney General), for the people.

WRIGHT, J.—Upon this application, the counsel for the prisoner have directed me to seven distinct exceptions taken during the progress of the trial, each one of which they deem of sufficient importance to merit an examination and review by the supreme court. On the contrary, the attorney general contends that there is but one of the exceptions at all worthy of consideration. The exception which relates to the admission of proof of the statements made by the prisoner under oath at the coroner's inquest, he concedes, at least, by an elaborate argument of the point, is not to be regarded as frivolous. In determining whether the prisoner shall have an opportunity for review by the supreme court of the exceptions taken, I am not necessarily called upon to arrive at the positive conclusion that the court erred as to the law. It is enough that there is any one exception in the case which I deem not to be frivolous; and which involves a gravely important question, respecting which there may be even a conflict of authority, but which remains unsettled by the courts of this state.

On the trial, the prosecution proved that an inquest was held by the coroner of the county of Albany, on Monday evening, the 7th March, (the death having occurred on the evening previous,) on the body of the deceased. The prisoner was called

by the coroner as a witness, and was sworn by him, and was examined as a witness, under oath, before the coroner's jury. The witness who proved these facts, *thinks* that the prisoner was subpœnaed by the coroner. The prosecution proposed to prove the statement made by the prisoner before the coroner's jury under oath. The counsel for the prisoner objected to the witness' stating what the prisoner swore to when testifying as a witness before the coroner, on the ground that what he swore to upon that occasion, was not a voluntary statement. The objection was overruled by the court, and the evidence admit ted, the prisoner excepting. The counsel for the prosecution then put to the witness this question: "What account did the prisoner give, when examined as a witness before the coroner of the circumstances attending the death of his wife?" The counsel for the prisoner objected to the question, on the ground that his statements, made before the coroner, were not voluntary, while testifying as such witness. The objection was overruled, and the evidence received, and the prisoner excepted. The witness then proceeded to detail the statements made by the prisoner. From the evidence of the witness, it appears that after the prisoner had stated the circumstances occurring on the evening of his wife's death, he was interrogated as to his having been in the city of Albany a short time previously, what he went to Albany for, and whether he had been in Springsteed's drug store, or any other drug store, whilst at Albany.

Neither my own necessarily limited examination, or the researches of counsel, have enabled me to find a reported case in the courts of this country, on the question whether, on a trial for murder, the deposition or statement on oath of the prisoner, taken before the coroner on the inquest held on the body of the deceased, is, or is not, receivable in evidence, or upon what precise principle, or under what circumstances, a prior deposition, or statement on oath, of the prisoner should be rejected on his trial for a criminal offence. The case of *The State* v. *Broughton* (7 *Iredell R.* 96), is the only reported American case that I have been able to discover, bearing upon the ques-

tion, under what circumstances, and upon what principle, the prior statement, or deposition of the prisoner, made on oath before a public officer or body, shall or shall not be receivable. In England, however, there are a number of reported cases. It must be admitted that the decisions of the British judges have not been always uniform; but the weight of authority seems to sustain the position, that when the circumstances do not show the prior statement or deposition of the prisoner made before a magistrate or coroner to have been entirely voluntary, it ought to be rejected.

In a case tried at Worcester, reported in a note to the case of *Rex* v. *Haworth* (19 *Eng. Com. Law R.* 370), where it appeared that a coroner's inquest had been held on the body of A, and it not being suspected that B was at all concerned in the murder of A, the coroner had examined B upon oath as a witness; *Park, J.*, would not allow the deposition of B, so taken on oath on the coroner's inquest, to be read in evidence on the trial of an indictment afterwards found against B for the same murder. In *Reg.* v. *Wheeley* (8 *Carrington & Payne R.* 250), the prisoner was charged with the murder of Mary his wife, by administering poison to her. It was opened by Hume for the prosecution, that the deceased had died from poison, but that there was no evidence to affect the prisoner, except a statement made by him before the coroner at the inquest. This statement purported on the face of it to have been taken on oath, but the coroner would state, if parol evidence was admissible, that in fact no oath was administered to the prisoner; *Alderson, B.*, said: " As the statement purports to be a statement on oath, I can not receive it as evidence against the prisoner; and I think, as it so purports, I can not allow parol evidence to be given to show that the statement was not made upon oath." In *Regina* v. *Owen et al.*, at the Stafford assizes, in 1840 (9 *Car. & Payne R.* 238), Owen, and two others, were charged with the murder of Christina Collins, by drowning her. The prosecution proposed to give in evidence the depositions of the prisoners taken on oath, on the coroner's inquest held on the body of the deceased; *Gurney, B.*, rejected the evidence. At a former

assizes held before Mr. Justice Williams, the prisoners had been tried for ravishing Mrs. Collins. The prosecution proposed to read in evidence the statements made by the prisoners on oath before the coroner's inquest; *Williams*, J., decided to receive the evidence, and reserve the question for the opinion of the fifteen judges. As the prisoners were acquitted, the point was not brought before the judges. This decision of Justice Williams was cited by the prosecution on the trial before Baron Gurney for murder; but the statements were, notwithstanding, rejected, the Baron saying, that he was not aware of any instance in which an examination on oath before a coroner or magistrate, had been admitted as evidence against the person making it. In *Regina* v. *Robert and Ann Sandys* (41 *Eng. Com. Law R.* 191), at the Welch summer circuit in 1841, the prisoners were put upon their trial for the murder by poison of their child, Elizabeth Sandys. It appears that she died on the 25th September, 1840, and was buried, and that no suspicion arose that her death had been occasioned by poison until the death of Mary Ann Sandys, another child, who died on the 13th October, 1840. The parents having insinuated that the child, Mary Ann Sandys, had been poisoned by a woman named Riley, she was taken into custody for examination before the coroner as to the cause of death. The mother, Ann Sandys, was examined on oath as a witness. In the course of examination, questions were put to her relative to the death of Elizabeth Sandys. In consequence of her answers, and other circumstances, the body of Elizabeth Sandys was disinterred and examined, when it appeared that she had died of poison. The parents were thereupon taken into custody on the charge of poisoning both children, and were brought before the coroner in custody separately. When Ann Sandys was brought in, she was told that she was charged with having poisoned her two children, and that that was the time when she might make any statement that she liked to the jury, and that what she said would be taken down in writing. Her former deposition made by her as a witness was then read over to her, and she said that she had a further statement to make, which she made, and

what she then said was written down, and afterwards read over to her. She was asked to sign it, but she refused. The coroner signed it, and it was produced at the trial, and identified by the person who wrote it, and was offered in evidence against Ann Sandys, together with her original deposition. The counsel for the prisoner objected, that as the greater part of the statement had been made by the prisoner when under examination before the coroner upon oath, it could not be read in evidence against her. *Erskine*, J., said he would receive the evidence, and reserve the point for the consideration of the fifteen judges. Ann Sandys was acquitted. Afterwards the case was considered by the judges, but as the prisoner, Ann Sandys, could not be again put upon her trial, their lordships thought it unnecessary to consider whether her examination had been properly received or not.

These are the only cases to which I have been referred, where the question has been distinctly raised as to the admissibility, on the trial of a person for murder, of the deposition or statement made under oath by such person on a coroner's inquest, held on the body of the deceased. The case reported in the note to the case of *Rex* v. *Howarth;* also, the case of *Reg.* v. *Wheeley*, and that of *Regina* v. *Owen et al.*, distinctly hold the inadmissibility of such statement or deposition. In *Regina* v. *Owen*, Baron Gurney rejected them when the prisoners were on trial for murder; while Mr. Justice Williams received them on the trial for rape, reserving the point for the judges.

In *Rex* v. *Lewis*, (25 *Eng. Com. Law R.* 333,) the prisoner was indicted for administering poison to Elizabeth Davis. On the day on which the prisoner was committed, she and several others were summoned before the Rev. Charles Bird, and examined on oath touching the poisoning, there being no specific charge against any person; but on the conclusion of the examination, the prisoner was committed for trial on the charge. The prisoner was examined on oath, and her examination taken down. On the trial, the prosecution proposed to put the examination in evidence. Baron Gurney would not receive it, saying, " That this being a deposition made by the prisoner at

the same time as all the other depositions upon which she was committed, and on the very same day on which she was committed, I think it is not receivable. I do not think this examination was perfectly voluntary. In *Rex* v. *Tubby*, (5 *Car. &* *Payne*, 539,) on an indictment for burglary, it was proposed by the prosecution to read a statement made upon oath by the prisoner at the time when he was not under any suspicion. Baron Vaughan decided to receive it, but as it contained nothing material, the prosecution did not offer it in evidence. This case was cited to Baron Gurney in that of the *King* v. *Lewis*, but he thought the cases were quite distinguishable. In the case of *Rex* v. *Merceron*, (2 *Starkie's N. P. Cases*, 323,) the defendant was indicted for corruption in office, in having corruptly granted licenses to public houses. In the course of the evidence for the prosecution, it was proposed to prove what the defendant said on his examination before the committee of the House of Commons. The defendant had been compelled to appear before the committee and was examined by them. It was objected that the statement was not voluntary, as he would subject himself to punishment for refusing to answer. Abbott, J., held the statement admissible. This case was afterwards questioned in *Rex* v. *Gilham*. (*Moody C. Cases*, 203.) In *Wheater's Case*, (2 *Lewis's C. C.* 157,) tried at the York spring assizes in 1838, the prisoner was indicted for perjury, and it was proposed to give in evidence against him his deposition taken on oath before commissioners of bankrupts. It was objected that the deposition was inadmissible as not being a voluntary statement; but to this it was answered that when before the commissioners he was not accused of any crime. Mr. Justice Coleridge received the evidence, reserving the point, and the judges were afterwards of the opinion that the evidence was admissible. In *The State* v. *Broughton*, (7 *Iredell's R.* 96,) a person sought the opportunity and voluntarily went before a grand jury, and was examined in relation to a certain offence. He was afterwards indicted for that particular offence. It was held on his trial that his testimony before the grand jury might be given in evidence against him. Roscoe

The People *v.* Hendrickson.

says, " A question sometimes arises whether a statement which has been made by a party upon his examination as a witness can be given in evidence against him if he should, himself, be put upon his trial for the same offence. The general rule is, that admissions made under compulsory process are evidence against the party." (*Roscoe Crim. Ev.* 45.) So also it is said by Starkie, " that when a witness answers questions on his examination on a trial tending to criminate himself, and to which he might have demurred, his answers may be used for all purposes." (2 *Starkie's Ev.* 3*d* ed. 28.) Greenleaf says, " that when the prisoner, having been examined as a witness on a prosecution against another person, answered questions to which he might have demurred as tending to criminate himself, and which, therefore, he was not bound to answer, his answers are deemed voluntary, and as such may be subsequently used against himself for all purposes, although, when his answers are compulsory, and under the peril of punishment for contempt, they are not received." And he cites *Starkie, Roscoe, Wheater's Case,* and *Rex* v. *Tubby.* (*Greenleaf Ev.* § 225.) So also he says, in commenting upon the case of *Rex* v. *Lewis,* " This case may seem at the first view to be at variance with what has been just stated on the general principles in regard to testimony given in another case; but the difference lies in the different natures of the two proceedings. In the former case the mind of the witness is not disturbed by a criminal charge; and, moreover, he is generally aided and protected by the presence of the counsel in the cause; but in the latter case, being a prisoner, subjected to an inquisitorial examination, and himself at least in danger of an accusation, his mind is brought under the full influence of those disturbing forces against which it is the policy of the law to protect him." (§ 226.)

The counsel for the prisoner contends that the principles to be deduced from these and other authorities, are, that to render the statement or deposition of the prisoner admissible against him, it must have been made under circumstances showing it to have been perfectly voluntary; that a statement made on oath before a coroner on an inquisitorial examination as to the cause

of the death of the deceased, when the prisoner did not volun-
teer to make it, is not a voluntary statement, but is made under
a sort of restraint or duress, and when he himself at least is in
danger of an accusation; that when such statement is not made
as a witness in a prosecution against a third person, but is
drawn from him under oath in an investigation by a magistrate
or coroner as to the cause of the death of the person that he is
afterwards indicted and put upon trial for the murder of, it is
not voluntary; and hence, under those circumstances, and whe-
ther the prisoner was at the time he made the statement charged
with crime or under suspicion or not, such statement or depo-
sition, or evidence, is not to be received against him.   On the
contrary, the attorney general contends, that whether the state-
ment be made before a coroner or other officer or body that may
issue compulsory process, the distinction is, that if, when a
person makes the statement sought to be offered in evidence,
he is not charged with any crime, or suspected, the statement
is receivable.   If he be suspected, or in custody, then it is to
be rejected.   The cases cited would seem to sustain, in a de-
gree, the positions of both counsel.   I think it is clear that the
previous statement of a prisoner ought not to be received
against him, unless it has been voluntarily made.   When made
in a civil suit, or in a prosecution against a third person, and
the witness's mind is not disturbed by a criminal charge, or he
is himself in no danger of an accusation, his testimony or state-
ment is deemed to be voluntary, and is to be received against
him.   When charged with crime, or suspected, any examination
under oath is not a voluntary examination, and for that reason
is to be rejected.   Indeed so far have the English courts gone
on this subject, that in the case of *The King* v. *Wilson*, ( 1 *Holt*,
597,) where the committing magistrate stated that the prisoner.
was not sworn, that he held out no hope or inducement to him
and employed no threats, but that he examined him at consi-
derable extent, in the same manner that he was accustomed to
examine a witness, Baron Richards refused to suffer the exami-
nation to be read, holding that it was " no matter whether the
prisoner was sworn or not.   An examination itself imposes an

The People *v.* Hendrickson.

obligation to speak the truth. If the prisoner will confess, let him do so voluntarily. Ask him what he has to say. But it is irregular in a magistrate to examine in the same manner as a witness is examined." It would be error, of course, for a committing magistrate to impose an oath, or even to examine as he would a witness, a person charged before him with crime. Statements or confessions made under such circumstances would not be voluntary. Are they or not to be deemed voluntary, when made under oath, on an inquisitorial examination by a coroner as to the cause of the death of the deceased, no specific charge being made against any person? This is the important question in this case, and as I have intimated, I am not called on upon this application to definitively arrive at the conclusion, that, in law, statements or confessions made under such circumstances are not voluntary and should be rejected. It is enough that there is doubt as to the law; that from the decided cases, it is not a clear proposition that the presiding judge, on the trial of the prisoner, was right in admitting evidence of statements made on oath at the coroner's inquest, to justify me in giving the prisoner an opportunity to present the question to the supreme court. It is also worthy of remark that the evidence in the case, and the examination of the prisoner at the coroner's inquest, would seem to show that at the time of such examination he was a suspected man. The deceased had died suddenly. But a few hours before she was found dead, she had retired to her room in company with the prisoner, in her usual health. Her death occurred when he only was in her company. On his examination he was interrogated as to his being at Albany prior to his wife's decease, and whether he had been in Springsteed's or any other drug store in the city.

There are one or two other exceptions growing out of the admission of evidence on the trial, that I deem not unworthy of further consideration; especially that, when under the pretext of showing the state of feeling existing between the prisoner and his wife, and furnishing evidence from which the jury might infer a motive for the prisoner's committing the crime of which he was charged, the court permitted evidence

of charges of moral delinquency made by the wife against the prisoner, in conversations with him, without the prosecution proposing to show, or showing, that the prisoner resented such charges, or that they produced any ill will, or irritated, or revengeful feeling, on his part.

I shall allow a writ of error in this case, with a stay of proceedings on the judgment. One or two of the questions raised by the bill of exceptions are exceedingly important; and whether it shall be hereafter determined that the court of Oyer and Terminer erred or not upon these questions, there is at least, in my view, probable grounds to justify me in giving the prisoner an opportunity for a review of the questions by the Supreme Court.

---

SUPREME COURT.    Albany General Term, December, 1853.
*Watson, Wright* and *Harris,* Justices.