Westbrook, J.
The appellant, Charles P. Bragle, was indicted for an attempt wrongfully to obtain public moneys from the county of Albany by the presentation to its board of supervisors of a bill containing alleged false and fraudulent items.
He was convicted of such offense at the November term, in the year 1881, of the court of sessions of Albany county, and sentenced to the Albany penitentiary for the term of one year and six months. Such conviction has recently been affirmed by the supreme court at general term, and the appellant having taken an appeal to the court of appeals, asks the certificate provided for by section 528 of the Code of Criminal Procedure, that the execution of the judgment appealed from may be stayed pending such appeal.
Preliminary to the examination of the questions which such appeal will present, it is proper to say that the section of the Code referred to (528), and which has been in force since September 1, 1881, declares in what cases the certificate sought should be granted, by declaring that the judge must state therein, “ that, in his opinion, there is reasonable doubt whether the judgment should stand.” This legislative provision relieves all embarrassment. Whilst a single judge, acting either as a magistrate or holding a court, should generally be guided by an unreversed decision of a *302 general term of the supreme court; yet, when an application of this character is made to him, he must ask himself the question, Have I a “ reasonable doubt whether the judgment should stand ?” Precisely that interrogatory is now presented to me, and an examination of the points submitted in behalf of the appellant will be attempted with a view to its answer.
First. It is insisted that the court erred in permitting the witness, John P. Curley, whose name as a notary public was signed to the jurat of the affidavit purporting to have been made by the appellant to verify his bill rendered to the board of supervisors, to testify he administered the oath, without first proving that Curley was a nptary, and had the legal right to administer if.
If the appellant had been on trial for perjury, perhaps the objection would have been well taken. As, however, he was not indicted for such a crime, but for an attempt wrongfully to procure money from the county of Albany, by the presentation of a false and fraudulent bill, it was unnecessary to show that Curley was a notary public, or acted as such. If the bill presented to the board was in fact false and fraudulent, and purported to be verified before a proper officer, the proof of the attempt to procure its audit was as complete as it would have been, if the commission of the notary had been produced and the oath thus proved to have been legal. There is no force, therefore, as it seems to me, in this objection.
Second. The bill presented by the appellant to the board of supervisors for audit contained other items besides those for which he was indicted. It was undoubtedly proper to offer the entire bill in evidence for the purpose of showing that the appellant made the attempt wrongfully to procure moneys from the county of Albany, by the presentation of one, which, among other items, con tained some charged in the indictment *303 to be false and fraudulent. But the introduction of the whole bill for the purpose of proving that the appellant attempted to procure payment for certain ' charges therein contained, which the indictment alleges to be false and fraudulent, did not justify or permit a cross-examination of the appellant in regard to the correctness of these items, concerning which no such allegation was made. As the district attorney, however, disavowed the intent to raise the question of fraud in regard to them, and the court held their falsity could not be shown even upon a cross-examination, and as such examination may have been proper to throw light upon the meaning of those charges upon which the indictment was predicated, the alleged error is not so apparent as to justify the conclusion that for it the judgment of conviction could be reversed.
Third. It is claimed that the court improperly refused to permit the appellant to ask Charles W. Arnold the following question: “Do you remember the price of the coffin you were to furnish?” To understand the point presented, a statement of facts is necessary.
Among the items in the bill presented by the accused was one reading thus: “June 24th, Edward Kilburn, $10.” This was one of the alleged false and fraudulent charges in such bill, and one of those upon which the appellant was convicted. The claim of the prosecution was, that this item, which related to the burial of the body of Edward Kilburn, was fraudulent, because the appellant had agreed with one Edmund J. Creidge, a fellow-workman of the deceased, that the entire cost of the coffin, caring for the body and burial, should be only $25, which Creidge had paid. The bill and receipt of the prisoner therefor was produced, which showed a charge, of the date of June 30, 1879, against Creidge for “ 5x9 imitation case-top coffin and box, trimmed, *304 for remains of Edward Kilburn, $24,” and its payment.
Creidge also testified that before the arrangement was made with the accused, he had made a bargain with Charles W. Arnold to perform the same service, and therefore at first objected to deal with the appellant, though he finally yielded when informed it was the wish of the widow of the deceased that he should do so.
The accused, in his defense and by his own testimony, claimed that he had made no bargain with Creidge, as the latter testified; that he had taken charge of the body at the request of the widow, who was dissatisfied with the care which Arnold had given to it, and the sum he was to receive, and did receive, was for the coffin only; that the corpse, being in a very bad condition, it required extra care in its treatment and preparation for burial, for which care and the burial the charge of $10 in the bill was made.
From this statement it will be observed that one question of fact in the cause was: Had the accused contracted to perform the services charged in the bill rendered to the supervisors for the $24 which Creidge paid ? As the testimony of the prosecution and defense were directly opposed, the latter claimed that it was proper to prove by Arnold that Creidge had agreed with Arnold to pay to him $35 for a coffin only, and that such coffin was inferior to and less in value than the one which the accused had furnished.
It does seem to me that this evidence was proper. If Creidge had agreed to pay Arnold $35 for a coffin less in value than that which the accused afterwards furnished, it certainly was a circumstance corroborative of the latter’s story, that the $24 received only covered the price of the coffin, and did not include the care of the body and its burial. This fact, if proved, certainly tended to make his version of the agreement with *305 Creidge reasonable, and that of Creidge unreasonable, because by it a coffin better than the one which Arnold was to furnish was procured for $11 less money, and that therefore it was unlikely that the accused, in addition to the furnishing of such superior coffin for a less sum, would also have undertaken the care of the body and its burial without any further charge. If two witnesses disagree as to the terms of an agreement, it is certainly for the jury to say which is to be believed, and to determine that question the circumstances attending its making, which throw light upon the bargain, are proper. The previous understanding with Arnold was one of these circumstances, and when it was given in evidence the jury could better judge as between the evidence of Creidge and the accused.
In answer to this objection the district attorney has urged that even though the money received from Creidge did not include the service for which the charge was made, yet that fact did not make the county liable for it. This is certainly true. What is and what is not a proper demand against a county is, however, a question of law. In regard to that, the accused might be ignorant, and he could only be convicted when he knowingly presented an unjust claim against the county, and endeavored to obtain its payment. If the evidence of Creidge was true, it established not only the falsity of the charge, but guilty knowledge ; for every person knows that it is unlawful to receive compensation twice for the same service. If Creidge had been disbelieved, it is impossible to say what the verdict of the jury would have been upon the item which it involved, and important testimony bearing upon the accuracy of his evidence was excluded.
It is also argued that the evidence rejected related only to one of the three items upon which the appellant was convicted, and therefore it worked no injustice. To this two answers can b e made : First, by the *306 terms of the act which makes the crime (L. 1875, c. 19), for an attempt to commit which the conviction was had, the punishment may depend upon the amount of the money wrongfully obtained, and the punishment imposable thereunder regulates that to be inflicted by this verdict (3 R. S. 6 ed. p. 988, § 3, subd. 5). Second, the effect of the conclusion of the jury as to the guilt of the accused, upon this charge, cannot be ascertained. It may have been the turning-point in their deliberations. If Creidge had been disbelieved, and the prisoner acquitted of guilt in this particular, it might have altered the result upon the others. Courts are not to speculate as to the probabilities, it is enough to know that evidence material to the issue has been rejected.
Fourth. It is urged that the accused was absent during a part of the trial, and that this was error.
The case shows that he “ left the room and was absent about five minutes, during which time the examination of a witness was continued.” The room into which he entered was one communicating with the court-room, divided from it by swinging doors, distant fifteen or twenty feet from the judge’s desk, and the object of going therein was to communicate with some witnesses by telephone. The absence was voluntary, and the continuance of the cross-examination of a witness during such absence was the desire of his counsel, and against the objection of the district attorney. Does this absence vitiate the conviction \ A stronger case against the validity of the objection can hardly be stated, and yet the question is a very difficult one.
The crime charged was a felony, because under it, if convicted, the accused could be sent to the State prison (3 R. S. 6 ed. p. 995, § 51; L. 1875, p. 988, c. 19, § 3, subd. 5).
The Revised Statutes (vol. 3, 6 ed. p. 1029, § 18) declare: “No person indicted for any felony can be *307 tried, unless he be personally present during such trial;” and the new Code of Criminal Procedure (section 356) provides : “If the indictment be for a misdemeanor, the trial may be had in the absence of the defendant, if he appear by counsel; but if the indictment be for a felony, the defendant must be personally present.” Were these provisions of the law complied with, and if they were not, could they be waived %
A presence during a trial necessarily involves an attendance upon the whole of it. An absence during a part of the proceedings reduces the personal presence to that of an attendance upon a portion of the trial only; and a room adjoining that in which the court is being held, separated from it by doors, which prevent the accused from seeing and hearing the proceedings, is as much, in fact and in truth, an absence as a departure to a remote locality. It is actual presence in the court-room which the law requires, and no nearness of access to it, or being where he could be conveniently called, meets its demands.
The law, too, is mandatory as to such presence, not only because the protection of the party on trial requires it but because, in its judgment, the decorum and proprieties to be observed during the hearing of so grave an accusation demand it. Grant that a party may waive statute and constitutional laws enacted for his benefit, does that empower him to dispense with the forms which the law declares shall be observed for the purpose of maintaining its own dignity in the administration of justice ? Clearly not, as it seems to me; and though cases holding the contrary can be found, I have never been able to see how such a plain enactment could be disregarded. It is, I know, a strong temptation to a court, when it sees that absence from a court-room by a prisoner under circumstances such as this case discloses has worked no injury to him, to overrule such a point as this; but what the *308 law commands must be obeyed, and to all arguments of bad faith, want of injury, &c., there is a single answer, and that is to point to the words of the statute and say, “ Ita lex scripta est.”
It is scarcely worth while, however, to reason upon this point, as the case of Maurer v. People (43 N. Y. 1) covers it. The plaintiff in error had been convicted of murder, which was affirmed in the supreme court at general term. The alleged error consisted in the answering by the court of interrogatories propounded by the jurors during their deliberation upon the verdict, in relation to what the evidence was upon certain points. They came into the court-room for the purpose of asking the questions and receiving the answers. The prisoner was not brought into court, but as the report states, his “counsel was present and took no exception or objection, and did not suggest his client was not present; and the attention of the court was not directed to such fact.” So that it must be assumed the jury was correctly informed as to the evidence which had been given in the presence of the prisoner, the counsel consented to the procedure, and no injustice was .really done. Yet this conviction was reversed by the court of appeals upon this ground, the court saying, per Grover, J. (pages 4 and 5): “ The clause, 1 during such trial,’ as used in the statute, includes all proceedings had in impaneling the jury, the introduction of evidence, the summing up of counsel, and the charge of the court to the jury, receiving and recording the verdict. In all these proceedings the legislature has deemed the presence of the accused'essential to the attainment of justice and the protection of the innocent. ... As the instructions were a proceeding in the trial, the statute forbade their being given in the absence of the accused. The presence of his counsel at the time, and his failure to object, was no waiver. By no consent of the accused, or of his counsel, can an *309 indictment for a felony be lawfully tried in his absence, for the sufficient reason, that the statute forbids it.”
It is true that in the case referred to the absence of the prisoner was partially involuntary,, and in the one in which the present application is made it was purely voluntary; but it is also true that in Maurer». People, his counsel was present, and could readily, if he had so desired, have secured the prisoner’s presence, so that the absence was not strictly an unwilling absence. To cover, therefore, the whole point of the answer to the objection urged to the conviction, the opinion of Judge G-eoveb, and in the absence of any dissent it must be assumed the whole court concurring, declares that “ no consent of the accused or of his counsel ” could waive the necessity of the presence of the prisoner, “for the sufficient reason that the statute forbids it.”
Coinciding, as my own views do, with those of the learned judge who uttered them, I am compelled to say that the absence of the accused from the court-room during the examination of a -witness was error, which neither his consent nor that of his counsel could cure. And even though my judgment did not concur with that of the eminent dead jurist who has spoken as has been quoted, I should still, in view of his learning and eminence, hesitate to express any dissent.
Fifth. It is also said in behalf of the accused, that the court wrongly instructed the jury to the effect that the charge was a misdemeanor.
This certainly was erroneous, for it has been shown in the prior part of this opinion that the indictment was for a felony, because on conviction the party could be sent to State prison. The prisoner had the right to insist that the jury should be accurately informed as to the consequences of their verdict, but by his counsel he misled the court as to the character of the crime whereof he was accused, and also failed to except to the charge in that particular. The motion for a new *310 trial upon that ground (Code, § 465, subd. 5) did not present the point, for the court could only grant it when “the defendant has, at the trial, excepted to such misdirection.”
Sixth. But, lastly, it is urged that the judgment is wrong, because the statute has made no provision for its punishment.
The Revised Statutes (vol. 3, 6 ed. p. 988, § 3, subd. 5) cover the case. They enact: “ If the offense so attempted be punishable by imprisonment and by a fine, the offender convicted of such attempt may be punished by both imprisonment and fine, not exceeding one-half of the longest time of imprisonment, and onelialf of the greatest fine which may be imposed, upon a conviction for the offense so committed.”
The indictment alleged an attempt to commit a crime defined by chapter 19 of the Laws of 1875. The first section of that act allows, in the discretion of the court, both imprisonment and the imposition of a fine, and therefore the appellant was accused of an attempt to commit a crime “punishable”—that is, capable of being punished—by fine and imprisonment, and this provision just quoted from the Revised Statutes was applicable to it.
I have now examined each point submitted upon this application, and my conclusion is that the certificate asked should be granted. Respect for the tribunal whose judgment is sought to be stayed, and of the individuals composing it, required, as it seemed to me, a careful statement of my reasons for granting the opportunity for review. As truth and right are often reached only after full discussion, this somewhat lengthy opinion may, if it does not convince, at least aid in reaching a right conclusion by presenting the opposite side.