## Supreme Court— Chambers—Herkimer County.

*December*, 1884.

## PEOPLE *v.* WENTWORTH.

CERTIFICATE STAYING EXECUTION OF JUDGMENT—CODE CRIM. PROC. §§ 527, 529.

Upon an application for a stay of execution of a judgment on the ground that there is a reasonable doubt whether the judgment should stand, it is not necessary to decide as to whether the judgment would be affirmed or reversed upon a full consideration of the case and the bill of exceptions.

The pertinent inquiry is: Did anything occur on the trial which raises a reasonable doubt whether the judgment should stand?

Where it is doubtful whether a ruling of the court upon the trial was sufficiently broad to take from the jury the consideration of evidence clearly incompetent, such reasonable doubt as to whether the judgment should stand exists as may authorize a stay of execution of the judgment.

APPLICATION by defendant, Delos D. Wentworth, for a stay of execution of judgment.

At the Herkimer County Sessions, December, 1884, the defendant was tried and convicted on an indictment, charging him with the offense of bigamy.

Thereupon the defendant made a motion to the court for a new trial upon the minutes ; which, after argument, was denied on December 24, 1884, and the prisoner was sentenced to be confined in the state prison at Auburn for a period of four years and six months.

Thereupon, an application for a certificate, *pro forma*, was denied by the county judge who presided at the trial. The district attorney and the prisoner's counsel, with a view of the present application for a certificate, waived the notice required by section 529 of the Code of Criminal Procedure, and appeared at Supreme Court Chambers upon this application.

The prisoner's counsel read an affidavit giving the general history of the trial, alleging that during the progress of the trial some thirty exceptions were taken to the rulings and the decision of the court, and avowing an intention to appeal to the Supreme Court from the judgment, and upon the exceptions and the case.

Counsel also stipulated that this application, in addition to the affidavits produced by the prisoner's counsel, should be considered upon the stenographer's minutes taken at the trial.

In accordance with that stipulation the stenographer appeared at Chambers and read such portions of his minutes as were deemed important, bearing upon the question whether a certificate should be granted, under section five hundred and twenty-seven of the Code of Criminal Procedure.

*Abram B. Steele*, district attorney, and *D. E. Pomeroy*, for the people.

*Amos H. Prescott*, for defendant.

HARDIN, J.—Section five hundred and twenty-seven of the Code of Criminal Procedure provides for a stay of execution of judgment " upon filing with a notice of appeal a certificate of the judge who presided at the trial or a judge of the Supreme Court, that in his opinion there is reasonable doubt whether the judgment should stand."

If such a certificate is given it may be filed with notice of appeal.

It has been made manifest upon this application that the prisoner has already or intended to appeal in good faith from the judgment pronounced against him by the Court of Sessions.

In considering the application now at hand it is not necessary to reach a conclusion as to whether the judgment would be affirmed or reversed upon a full consideration of the case and the bill of exceptions; indeed, the exact language of a case or bill of exceptions is not now in hand, so that the mature and final reflection which would arise from a perusal of a case and exceptions fully drawn out and carefully revised and settled by the court, cannot be given to all the circumstances surrounding the case; but, upon the other hand, this application is to be granted or denied according to the opinion which may have been entertained upon the application, pending as to whether or not "there is reasonable doubt whether the judgment should stand."

First. It is no answer to the application that a general survey of the evidence leaves an impression upon the mind that the prisoner is guilty.

Second. It is no answer to this application to say that the circumstances under which the defendant testified were such as to cause suspicion of the truthfulness of his evidence, nor the circumstances disclosed at the trial were such as to corroborate or sustain the testimony of Mary Sullivan; but the pertinent inquiry is, was there anything occurring in the course of the trial which raises a reasonable doubt whether the judgment should stand ?

It may be observed, there was no exception to the charge as delivered by the learned county judge.

Considering the body of the charge in connection with the request to charge which was refused, it is not apparent that any error was committed in refusing the request presented by the prisoner's counsel in respect to the evidence relating to the alleged marriage with Mary Sullivan.

Mary Sullivan testified that she was married to the defendant in 1876, at the city of Utica, at an office in the Exchange Building.

The defendant stoutly contradicts her testimony in that regard.

A very vital issue was thus presented in the course of the trial, and it was the gravest question of fact arising from the evidence. If her testimony was truthful, then there was a marriage between the defendant and her in the eye of the law. Hayes *v.* People, 25 *N. Y.* 390 ; Bissell *v.* Bissell, 7 *Abb. N. S.* 20.

The people sought to corroborate her testimony ; to this end certain admissions of the defendant were properly received, and also certain acts and declarations of his.

The people also called the witness Harter to the stand, who, after giving the introductory part of his testimony was asked, viz: Q. " Mr. Harter, did you learn of a marriage there about the latter part of November, 1876 ?" By Mr. A. H. Prescott—" I object to it—incompetent and immaterial." By the court.—" I will see what it is, it may not be material." Exception recorded for defendant. A. " I did." Q. " What was there about it—what did you learn ?" A. " I learned that a marriage took place at Judge Jones' office some time in the early part of the evening, in the month of November, seventy-six. I think I heard of it in this way—that was the report, and some parties were joking with Judge Jones about the parties being married in his office. I think one was a constable by the name of Latham. They were talking it over, and seemed to be joking with Judge Jones on account of the marriage having taken place in his office in his absence."

It seems to have been conceded by the district attorney, in the course of the argument, upon this application, that the evidence of Harter that a report prevailed about the Exchange building, that a marriage had taken place there in '76, was incompetent evidence ; indeed, such a concession seems reasonable in view of the circumstance that the court was asked at a later stage of the case to strike out the evidence.

The language of the motion to strike out was as follows: By Mr. A. H. Prescott.—" I move to strike the evidence all out."

The language of the court in determining the motion was :

"I shall grant the motion to strike out the evidence in respect to the conversation concerning the marriage."

If we take the literal language of the court, all the conversation which had been detailed by the witness in respect to the marriage was stricken out.

If that order has reference to the interpretation of what transpired at the trial, the query remains whether the ruling was sufficiently broad to expunge from the minutes the fact that a report of the marriage in 1876, was extant, according to the questions propounded to Harter. In the early part of the evidence it would seem that the prosecuting counsel regarded the circumstance that a report of a marriage which had transpired, tended to corroborate the testimony of Mary Sullivan.

If such report was allowed to remain in the evidence by the exact language of the ruling, the query fairly remains, whether or not the existence of such a report was competent, and if not competent, whether its reception tended to prejudice the prisoner to such an extent, to require a new trial to be granted.

The case where an erroneous charge by a judge has been corrected upon his attention being called to the error, and thus the error cured, is not in point.

It was held by the Court of Appeals in the case of Greenfield *v.* People, that an unqualified withdrawal of an erroneous proposition laid down to the jury was sufficient to work a cure of that error. Greenfield *v.* People, 85 *N. Y.* 90, and cases there cited.

This case in hand differs somewhat from the ruling made in Linsday *v.* People. There, the facts which were supposed to be material as they fell from the mouths of the witnesses, were absolutely stricken out, and the jury directed to disregard them. Linsday *v.* People, 63 *N. Y.* 154.

Query—was the action of the court of Sessions in the case now in hand equivalent to the exclusion of all the evidence objected to, which was incompetent; or was it equivalent to an instruction to the jury to disregard any such incompetent evidence which was received during the progress of Harter's testimony ?

The answer to be given to these queries is not so clear as to

warrant an affirmation that there is not "reasonable doubt" in respect thereto.   Section 529 *Code Crim. Pro.*

It must be borne in mind that the court may, upon review of the whole case, be of the opinion that "the error complained of did not, and could not affect the result, nor work an injury or injustice to the party objecting" and that therefore the court may not have authority to reverse the judgment upon that ground.   People *v.* Gonzalez, 35 *N. Y.* 49.   But it would be inopportune to apply the principle laid down in that case upon this application.   If, upon a review of a settled case and exceptions, the appellate court should be of the opinion that the principle alluded to should be applied, then the same can be declared in pronouncing the judgment of the appellate court.   It would not be in accordance with the practice that has prevailed in respect to allowing appeals or reviews or stays accompanying reviews, to apply that principle upon this application.

Several other rulings were made in the progress of the trial, which have been cursorily referred to, which at the first glance do not suggest any error.

It may be observed that the court of Sessions apparently conducted the trial with care, caution and discretion, evidently aiming conscientiously to discharge its duty in the important criminal trial before it.

The intimations already made are not to be taken as a positive declaration that an error was committed during the progress of the trial, but rather that there seems to be in the course of the trial sufficient debatable ground to warrant the opinion that "there is reasonable doubt whether the judgment should stand," and that a case calling for the exercise of the power given by section 527 of the Code of Criminal Procedure is presented.   A certificate, therefore, will be executed in accordance with that section.

Application granted.

NOTE.—Where there is doubt as to the construction of a statute not yet passed upon by the court of last resort, a stay should be granted. People *v.* Clark, 2 *Edm. Sel. Cas.* 280 ; 1 *Park.* 347 ; see People *v.* Hendrickson, 1 *Park.* 396.   The inquiry should be whether the indi-

vidual judge to whom the application is made, has a reasonable doubt whether the judgment should stand. People *v.* Bragle, 10 *Abb. N. C.* 300.

In the recent case of People *v.* Platt, Mr. Justice VAN BRUNT, after an exhaustive review of the evidence, said, "I am of the opinion therefore, that there is no reasonable doubt as to the propriety of the conviction, and that a stay should be refused unless the defendant stipulates not to apply for bail pending the appeal."

A part of this opinion (not here fully reported, as dealing almost exclusively with facts) will be found in the report of the case at General Term, *infra,* p. 129, where Justice VAN BRUNT's conclusions are fully sustained.