## PEOPLE v. EMERSON.

(Supreme Court, Special Term, New York County. December 17, 1888.)

1. GAMBLING—EVIDENCE.
   On a prosecution for selling lottery tickets, and keeping a room for the purpose of gambling, evidence of gambling transactions, extending over a period of about eight months preceding the date of the offense charged in the indictment, is admissible; Code Crim. Proc. N. Y. § 280, providing that the precise time at which a crime was committed need not be stated in the indictment.

2. SAME.
   Evidence of slips of paper found in the defendant's room on sweeping it is proper, when taken in connection with the testimony of another witness as to slips used in the alleged unlawful transactions, and the evidence relating merely to the width of the slips.

3. SAME.
   In such an action it is proper to show what is commonly known as a "lottery policy" by one who is familiar with such documents, the papers not being before the court, and the statute not defining the term.

4. SAME—ACCOMPLICE.
   Under Pen. Code N. Y. §§ 326–335, prohibiting the sale of lottery tickets, one who purchases a lottery ticket is not an accomplice with the seller.

5. CRIMINAL LAW—VERDICT.
   A general verdict of guilty on three counts in an indictment charging different grades of an offense, but relating to the same transaction, is proper.

At chambers.

John R. Fellows, Dist. Atty., for the People. Howe & Hummel, for defendant.

LAWRENCE, J. The defendant was tried and convicted in the court of general sessions upon an indictment charging him and one Goss with selling lottery policies, and with keeping a room for the purpose of gambling, and an application is now made to me, under section 527 of the Code of Criminal Procedure, for a certificate "that there is reasonable doubt whether the judgment should stand," and for a stay of the execution of the judgment pending the appeal taken to the general term of this court. The indictment contains five counts, the first and second of which charge the keeping of a room for gambling and the keeping of a room for the sale of lottery policies; the third for the selling of lottery policies; the fourth, for selling writings in the nature of a bet or wager, upon drawn numbers of a lottery; and the fifth for the selling of writings in the nature of insurance on the drawing of a lottery. Upon the trial the second and fifth counts were abandoned, and the jury rendered a verdict of guilty on the first, third, and fourth counts. Various grounds are assigned by the learned counsel for the defendant as reasons for the granting of the certificate and stay, which I will briefly notice.

It is claimed, in the first place, that the court erred in receiving evidence as to transactions on days other than the day named in the indictment. In the indictment the offense charged was stated to have been committed on the 18th of September, 1888, and evidence was received tending to show transactions extending over a period from the 1st of January of that year to that date. I do not think that in receiving such evidence the court erred. See Code Crim. Proc. § 280; Cowley v. People, 83 N. Y., 464, and particularly the language of FOLGER, C. J., at pages 470, 471; Reg. v. Firth, 11 Cox, Crim. Cas. 234; and 1 Bish. Crim Proc. (3d Ed.) § 397.

It is also claimed that the testimony of the witness Addie Kilmarx, as to what she found in the defendant's place, 180 Broadway, when she swept up

the room, was improperly admitted. In this view I do not concur. The evidence was apparently proper, when taken in connection with the testimony of Bedell as to the slips of paper used in the alleged unlawful transactions; and in any event, as the result of the testimony simply was a description of the width of the papers, it does not seem to me that any violation of the defendant's rights was committed in admitting it.

It is said, in the third place, that the court erred in admitting evidence as to the transactions between the messenger boys and Bedell. It seems to me that this evidence, taken in connection with the testimony given by the expert witness, Carvallho, was competent to show the illegal nature of the business transacted between Bedell and the defendant.

As to the fourth objection, that the court erred in permitting the witness Bedell to testify that at different times his brother asked him where he got the money from, and that he told him he got it from 180 Broadway, the answer of the district attorney seems to me to be sufficient, to-wit, that it was proper to show, in answer to the facts elicited on the cross-examination, that Charles Bedell did not know, and had no reasons to suspect, that his brother was engaged in the commission of crime, or of drawing revenue from illegal or criminal sources. The evidence of Anthony Comstock, as to what is commonly known as a "lottery policy," does not seem to have been improperly received. The prisoner was indicted under section 344 of the Penal Code for selling divers papers, instruments, and writings, commonly called "lottery policies." The statute contains no definition of the term "lottery policies," and, the papers themselves not being before the court, it was competent to show by one who had familiarized himself with such documents precisely what is known among those who use them as a "lottery policy" or "policies." There certainly was nothing before the court which would enable it to take judicial cognizance of the nature or description of a lottery policy; and I agree with the district attorney that it was as proper to show, by one familiar with the facts, the nature and description of a lottery policy, as to prove, which I understand to be an every-day occurrence under section 410 of the Penal Code, the nature and description of a weapon commonly known as a "slung-shot," or, under section 508, what is an instrument adapted or commonly used for the commission of burglary, etc.

It is further claimed that the witness Bedell was an accomplice with the defendant, and that the court, therefore, erred in refusing to charge the jury that he must be so regarded, and that unless they found that he was corroborated, being an accomplice in the commission of the offense charged, the defendant should be acquitted. The authorities cited on the part of the people seem most conclusively to establish that no error was committed in refusing to charge as requested in that respect. In *People* v. *Noelke*, 29 Hun, 461, it was held that one purchasing a lottery ticket for the purpose of showing that the vendor was engaged in a violation of the statute was not an accomplice with the person from whom the ticket was purchased. See, also, *People* v. *Noelke*, 94 N. Y. 137, and *Com.* v. *Willard*, 22 Pick. 476. In the case of *People* v. *Smith*, 28 Hun, 627, the defendant was convicted of a violation of the excise law, in selling beer in quantities of less than five gallons without a license, and all the evidence under which she was convicted was given by the person to whom the sale was made. It was objected that under section 399 of the Code of Criminal Procedure, prohibiting a conviction upon the testimony of an accomplice, unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the crime, the prisoner could not be convicted upon the uncorroborated testimony of the witness. This objection was held to be untenable by the general term of this department, it being determined that, as the excise law made only the person selling, and not the purchaser, guilty of a criminal act, the purchaser was not an "accomplice," within the meaning of said section of the Code. That case

seems to be peculiarly in point upon the subject now under consideration, inasmuch as the statute in reference to lotteries does not make the purchase of a lottery ticket a criminal act, the prohibition contained in the statute being directed against the selling, the advertising, or offering for sale, or the insuring, of lottery tickets, etc. See Pen. Code, §§ 326-335, inclusive. See, also, *Com.* v. *Willard, supra.*

The learned counsel for the defendant seeks to draw a distinction between the cases just cited, and the case at bar, in that in those cases the witness who had made the purchase was either an officer of the law, or was acting in an official capacity, and engaged in an effort to secure a conviction of a violator of the law. But the language of DANIELS, J., in the case of *People* v. *Smith,* disposes of this objection. The learned judge says at pages 626 and 627: "The purchaser has been subjected to no criminal accountability whatsoever, and by the mere purchase he could not be a participant in the performance of the act which the statute has declared to be an offense. That was performed wholly and exclusively by the defendant; for she, unaided by the purchaser, acted alone in making the sale. An accomplice is a person involved, either directly or indirectly, in the commission of the crime. To render him such, he must in some manner aid or assist or participate in the criminal act, and by that connection he becomes equally involved in guilt with the other party by reason of the criminal transaction." The learned justice cites, in support of his position, *Com.* v. *Willard, supra; Com.* v. *Downing,* 4 Gray, 29; *Campbell* v. *Com.,* 84 Pa. St. 187; *State* v. *McKean,* 36 Iowa, 343; *Trustees, etc.,* v. *O'Mailey,* 18 Ill. 407; *Smith* v. *State,* 37 Ala. 472; *People* v. *Farrell,* 30 Cal. 316.

Lastly, it is claimed that, the jury having found the defendant guilty on all the three courts submitted to them, the verdict was illegal, because it found the defendant guilty of three offenses of different grades, and that the verdict should have specified one particular count. This objection seems to be most fully answered by the opinion of the court of appeals in the case of *Conkey* v. *People,* 5 Park. Crim. R. 31, 37; and *Hawker* v. *People,* 75 N. Y. 487. In the former case CLERKE, J., in delivering the opinion of the court, says: "The jury at the trial of the indictment found the following verdict: 'That they find the prisoners at the bar guilty of the offense charged in the indictment.' The charges in the indictment are—*First,* rape against Conkey and Herrington, *second,* rape against Conkey, and against Herrington, for assisting Conkey in committing a rape; *third,* assault and battery against both Conkey and Herrington, with intent to commit rape. It is maintained by the counsel for the defendants that the jury have found the prisoners guilty of every one of these offenses, without specifying which, and therefore that the verdict is fatally defective. Although this is not the usual way of rendering a verdict in criminal cases, I can discover no substantial difference between it and the ordinary verdict of guilty. Like the ordinary form, it responds in general terms to the indictment, and this constitutes what is termed a 'general verdict.' If the usual verdict of 'guilty' was the form entered in this case, it would not be pretended that the jury might have intended to find the prisoners guilty of the mere attempt at an offense. When a general verdict of guilty is rendered upon several counts in an indictment, relating to the same transaction, the practice is to pass judgment on the count charging the highest grade of offense. Whart. Crim. Law, p. 1037, § 3048; *Harman* v. *Com.,* 12 Serg. & R. 69. The verdict is to have a reasonable intendment, and it would be far from reasonable to say, if the jury intended to declare the prisoners guilty of only the inferior grade of the offense charged, that they have not said so, and would not specifically find them guilty of it. To relieve them from the consequences of the higher grade, the jury would unquestionably have employed language expressing that intention, and would have limited their finding to the inferior grade."

In the latter case there were two counts in the indictment, which was under chapter 181 of the laws of 1872, in relation to abortions and other offenses. By the first section of that act, a party committing the offense was declared to be deemed guilty of a felony, punishable by imprisonment in the state-prison for the term of not less than four nor more than twenty years. By the third section of the act, a party convicted was declared to be punishable by confinement in a county jail or state-prison for not less than one nor more three years. The plaintiff pleaded not guilty to the whole indictment, and the court charged the jury that a general verdict of guilty would cover all the counts, but that, if they should find the prisoner guilty only under the third count, their verdict should be guilty under the third count. The jury returned a general verdict of guilty, and the prisoner having been sentenced to confinement in the penitentiary for 10 years, it was objected on appeal that the indictment was fatally defective, because it charged two distinct felonies,—one under the first section, and one under the third section, of the statute. The court, however, held that no error had been committed. EARL, J., in delivering the opinion of the court, says: "All the counts are under the same statute, and relate to the same transaction. In such a case it matters not that the offense alleged to have been committed is charged in different ways in several counts for the purpose of meeting the evidence that may be adduced; and it matters not that the offenses alleged in the different counts are of different grades, and call for different punishments. *People* v. *Rynders*, 12 Wend. 425; *People* v. *Baker*, 3 Hill, 159; *People* v. *Costello*, 1 Denio, 83; *Taylor* v. *People*, 12 Hun, 213; *Reg.* v. *Trueman*, 8 Car. & P. 727; Whart. Crim. Law, § 416. A count for burglary, with an attempt to commit larceny, may be united with a count for larceny. So burglary and larceny, rape and an assult with intent to commit rape, larceny and receiving stolen goods, assault with intent to kill and a simple assault may be united; and it matters not that the offenses thus united call for different punishments. In *People* v. *Baker* there were three counts, —one for receiving stolen goods, one for burglary, and one for grand larceny,—and the indictment was held good. So long as all the counts relate to the same transaction, as in this case, there can be no objection to the union of such counts in the same indictment." It is quite clear, from the observations of the court of appeals in these two cases, that the verdict in this case not only is not erroneous, but that it should be sustained. I therefore feel constrained to hold that none of the points discussed so elaborately in the printed brief of the learned counsel for the prisoner are of such a character as to require or to justify me in giving the certificate and stay which is sought for. In reaching this conclusion, I am well aware of the fact that, upon applications of this character, it is not necessary for the justice to whom the application is made to arrive at the positive conclusion that the court before which the trial was had erred in law, but that it is enough if he has a reasonable doubt as to the correctness of the law. *People* v. *Hendrickson*, 1 Park. Crim. R. 396; *People* v. *Lohman*, 2 Barb. 450; and *People* v. *Bragle*, 10 Abb. N. C. 300. After a full examination of the testimony, rulings, and charge of the learned recorder, I do not feel that such a reasonable doubt exists as to any of the rulings made, or propositions of law laid down, as to warrant me in staying the execution of the judgment. The prisoner appears to have had a most impartial and thorough trial. He was ably defended. The law was clearly and fairly stated, and I do not think that, in such a case, even if a remote doubt could be conjured up in regard to the admission of some unimportant piece of evidence, this court ought to interfere, and interpose a stay. For these reasons I must decline to grant the stay which is asked for.